**UNITED STATES of America**

v.

**Nelson C. HAJE, Charles Chramek, Louis J. Walker, Frank M. McQueeney, Carl Pettus, Defendants.**

No. 1233–57.

United States District Court
District of Columbia,
Criminal Division.

Feb. 28, 1958.

Frederick Smithson, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Myron G. Ehrlich, Washington, D. C., for defendants.

YOUNGDAHL, District Judge.

Three of the defendants, who have been indicted in this case for violation of the District of Columbia lottery laws, D.C.Code 1951, § 22–1501 et seq.; have moved to suppress the evidence obtained from the premises of 1621 Connecticut Avenue, N. W., consisting of numbers slips and other numbers paraphernalia. The movants allege that the search warrant authorizing the search of the above premises was issued without probable cause and therefore the subsequent seizure was violative of the Fourth Amendment.

The Government argues that probable cause was present when the warrant was issued and also contends that the defendants do not have standing to raise this question because they do not allege ownership in or the right to the possession of the premises searched or the property seized.[1] Defendants answer that the motion stated that certain property "was unlawfully seized *from them*"[2] and this is enough to meet that requirement. While the Court has some doubt whether this is a sufficient allegation of ownership or right to possession, the Court will proceed, nevertheless, to a consideration of the merits.

The facts as alleged in the affidavit upon which the warrant was issued are as follows:

The Metropolitan Police had received information on February 19, 1957, linking the telephone number HO 2–3415 to a $2,000-a-day numbers game. The source stated that the bets were placed by a man giving the name of Walter Dimery and using a code number, 1D. On June 13, 1957, the Metropolitan Police received another call from the Arlington County police that HO 2–3415 was being called from Fort Belvoir and very heavy number bets were being called into that exchange.

Acting upon this information, Police Officer Andrews investigating the case made a series of phone calls to that number and after identifying himself as Walter Dimery and giving the code number 1D, received numbers information.

The Court is of the opinion that the actions by the Police Officer in this case are in almost all respects identical with the actions of the police which were sustained in Washington v. United

1. Gaskins v. United States, 1955, 95 App. D.C. 34, 218 F.2d 47; Accardo v. United States, 1957, 101 U.S.App.D.C. 162, 247 F.2d 568.

2. Emphasis supplied.

States [3] and that the facts elicited constituted probable cause. Petitioners have attempted to distinguish the two cases, but as the subsequent analysis shows, no meaningful distinction is warranted.

| Instant case | U. S. v. Washington |
|---|---|

### First phone call

| June 18, 1957 | April 2, 1951 |
|---|---|

Police Officer Andrews called No. 2-3415 and asked for the first number. He identified himself as Walt. He was asked his code and said it was 1D. He was then told the number was 09. (The number for that day was later determined to be 093.)

Police Officer Molle called TU 4840 and asked, "What do you have for the first one?" He was told, "2". (The number for that day was later determined to be 218.)

### Second phone call

| June 19, 1957 | April 3, 1951 |
|---|---|

Officer Andrews telephoned the above phone number again and asked for the first number. He was told, "44 so far". (The number was later determined to be 442.)

Officer Molle telephoned the above phone number again and asked for the first number. He was told, "7". (The number was later determined to be 757.)

### Third phone call

| June 20, 1957 | April 4, 1951 |
|---|---|

Officer Andrews telephoned the same Hobart number and asked for the first two numbers. He was asked who he was and he again identified himself as Walt. He was told that it was "90". In the background a voice was heard giving the race result and the pari-mutuel. An hour later Officer Andrews called again and asked for the last number. The voice at the other end replied, "It's a 2, it's 902." (Subsequent investigation showed the number for that day to be 902.)

Officer Molle telephoned the same Tuckerman number and asked, "What is it today?" The voice at the other end replied, "a 9 and 2 so far." Twenty minutes later Officer Molle called again and asked for the number. He was informed it was 927. (Subsequent investigation showed the number for that day to be 927.)

### Fourth phone call

| | April 5, 1951 |
|---|---|

Officer Molle called and asked if Wash were there. When Wash was called to the phone Molle hung up. Washington was known as Wash.

3. 1953, 92 App.D.C. 31, 202 F.2d 214, certiorari denied 1953, 345 U.S. 956, 73 S.Ct. 938, 97 L.Ed. 1377.

| Instant case | U. S. v. Washington |
|---|---|

Fifth call

| June 21, 1957 | April 7, 1951 |
|---|---|
| Officer Andrews telephoned once more and asked what the first number was. He was told, "It's a 7." (The number was determined to be 752 for that day.) | Officer Molle called once more and asked what the first number was. He was told, "It's a 4." (The number was determined to be 431 for that day.) |

Sixth call

April 10, 1951

Officer Molle phoned and asked to speak to Wash. Wash was again called to the phone and after saying "Hello" a few times and receiving no reply, hung up. Molle called two minutes later and asked if they had the first one yet. He was told, "We don't have anything yet."

The distinguishing features of the two cases are that one extra phone call was made in the Washington case to receive numbers information—although none was received during the course of that extra conversation—and two calls were placed to a person named "Wash" at the above phone number. Also, Washington was known to the police as a numbers operator.

On the other hand, in the case at bar, the information was received from a police officer rather than an informant and there were two sources of information which led to the series of phone calls. Also in the instant case parimutuel and horse racing results were overheard by the police officer when he telephoned. Finally, in this case a code number was used in order to elicit the information. In both cases the phone was traced to the premises to be searched and a warrant obtained.

Of course rarely do two cases present exactly the same situation. The Court is of the opinion that the facts of the two cases are sufficiently similar so as to warrant the same disposition.

Defendants have argued that in the case of United States v. Mileo, [4] another Federal District Court sitting in the District of Columbia suppressed evidence obtained where only phone call information was available. Without expressing any opinion as to the correctness of the Mileo decision, it is enough to point out that the telephone calls in that case were only placed on two successive days, receiving the full number the first day and first number the next. In no case was there an allegation that the numbers given were in fact the payoff numbers for that day or correlated in any way with gambling.

The defendants have also emphasized that here there was no surveillance of the defendants, no observation of bulging pockets when entering a building and empty pockets when departing, no little brown bags, no actual placing of bets with these defendants. These facts, of course, could also give rise to probable

4. Criminal number 749–57.

cause. The Court does not feel, however, that the police are limited to this method of detection. The police do not have the man power to trail every suspect and watch his daily movements in order to discover the central location of the numbers operators. To so circumscribe law enforcement officers would hamper without any corresponding benefit. A series of phone calls to the suspected premises may, under given circumstances, provide equally sound grounds upon which to proceed.

Defendants have argued that the information received over the phone could have been equally easily obtained at a newspaper office or other reputable office where racing results were known. This argument, implausible in any case, is particularly not persuasive in this case where a code number and name had to be used before the information would be given.

Defendants have also cited United States v. Price,[5] a previous decision of this Court, where evidence of this type was suppressed. The Court has carefully considered the applicability of that case to this situation and feels the facts are substantially different.

The Court is not unmindful of the fact that in almost every case involving search and seizure it is the lawbreaker who has been discovered and who is asserting his constitutional right. It is necessary to see beyond, therefore, lest the lawful be unprotected. But, as the courts must always zealously protect the constitutional rights of those charged with crime, it is likewise important that a proper balance be maintained so that the rights of the public be not jeopardized.

There appears to be no other reasonable inference except that a gambling operation was in progress. The Court finds that there was probable cause for the Commissioner's issuance of the warrant. The motion is denied.